UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Shelby Furman, *et al.*,

    Plaintiffs,

-v-                                                              Case No. 2:08–cv–790

Codiam, Inc., *et al.*,                      Judge Michael H. Watson

    Defendants.

## OPINION AND ORDER

This case arises from alleged fraudulent representations regarding a pair of diamond earrings, a diamond ring, and a diamond bracelet. Shelby, Leonard, and Florence Furman ("Plaintiffs") brought this diversity action against Edward "Marc" Greenberg ("Greenberg"), Codiam, Inc. ("Codiam"), Cora Diamond Company ("Cora"), and E. Schreiber, Inc. ("Schreiber") (collectively, "Defendants") for common-law fraud and fraudulent misrepresentation in the sale of diamond jewelry. Compl. ¶¶ 63–90, ECF No. 2. Plaintiffs allege, *inter alia*, that Defendants damaged Plaintiffs by knowingly or recklessly making false representations with the intent of inducing Plaintiffs to purchase jewelry. This matter is before the Court on Defendants' Motion for Summary Judgment and for Sanctions, ECF No. 68, and two Motions for Order to Show Cause and Sanctions. ECF Nos. 64, 67.[1]

---

[1]Defendant Greenberg filed his motion for summary judgment on March 30, 2010. Mot. Summ. J., ECF No. 68. On April 14, 2010, Defendants Codiam and Cora moved to join in Defendant Greenberg's motion for summary judgment. Mot. Join Certain Pleadings, ECF No. 77. The Court granted Defendants Codiam and Cora's motion to join in Defendant Greenberg's motion for summary judgment. Order, ECF No. 78.

## I. FACTS

Plaintiff Shelby Furman ("Shelby") lives at 410 South Columbia Avenue, Bexley, Ohio. Shelby's parents, Leonard and Florence Furman ("Furmans"), live at 272 South Ardmore Road, Bexley, Ohio.

Codiam, Inc., Schreiber, and Cora are all businesses incorporated with their principal places of business in the State of New York. Greenberg lives in Durango, Colorado. He formerly sold jewelry for Codiam, and currently sells jewelry for both Schreiber and Cora.

This dispute involves the sale of three pieces of jewelry: a pair of diamond earrings ("the earrings"), a diamond ring with a large center stone surrounded by ten smaller stones ("the ring"), and a diamond tennis bracelet ("the bracelet"). Greenberg sold these three items of jewelry to Plaintiffs. Greenberg Answer ¶¶ 8, 16, 20, ECF No. 3. The earrings, ring, and bracelet were owned by Codiam, Cora, and Schreiber, respectively. *Id.* at ¶ 3.

From 1996 to 2005, Greenberg stayed at the Furmans' home on Ardmore Road when he was in town selling jewelry. Compl. ¶ 14, ECF No. 2. In December 1998, while Greenberg was staying at the Furmans' home, he showed the Furmans the earrings that Codiam authorized him to sell. *Id.* ¶ 15. Greenberg informed the Furmans that the earrings were worth $70,000[2] and the Furmans agreed to purchase the

---

[2]This value representation reflects what was pleaded in the Complaint. Plaintiff Shelby now attests that the values represented by Defendant Greenberg are significantly higher than initially pleaded in the Complaint and that his former counsel made errors in drafting those paragraphs of the Complaint. That matter is addressed below in Section II, B.

earrings for that price. *Id.* ¶¶ 16, 19. At Greenberg's request, the Furmans paid cash for the earrings. *Id.* The Furmans did not receive a receipt. *Id.* ¶ 21. Codiam sent the Furmans an appraisal stating that the earrings were worth $70,000 and the diamonds weighed a total of 7.46 carats. *Id.* ¶¶ 22, 23; Ex. A, ECF No. 2-1.

In February 2001, Greenberg showed the Furmans the ring that Cora had authorized him to sell. *Id.* ¶ 25. Greenberg informed them that the ring was worth $45,000,[3] the center stone was almost four carats, and the ten surrounding stones totaled about two carats. *Id.* ¶¶ 25, 26. The Furmans agreed to purchase the ring for $45,000. *Id.* ¶ 27. Greenberg had requested the payment in cash, so the Furmans gave their sons, Shelby and Randall, the cash to purchase the ring. *Id.* ¶¶ 28, 29. They did not receive a receipt. *Id.* ¶ 32. Cora sent the Furmans an appraisal stating the ring was worth $45,000, the center stone weighed 3.8 carats, and the surrounding stones weighed 1.99 carats. *Id.* ¶¶ 33, 34; Ex. B, ECF No. 2-2.

In March 2004, Greenberg showed Shelby the bracelet, which Schreiber owned, and indicated that each diamond weighed one-half carat. *Id.* ¶¶ 36, 37. Shelby agreed to purchase the bracelet for $58,000.[4] *Id.* ¶ 38. Shelby gave Greenberg a $16,000 check to give to Schreiber and agreed to pay the remaining amount in installments. *Id.* Greenberg did not give Shelby a receipt. *Id.* ¶ 39. During the sale, Greenberg phoned

---

[3]This value representation reflects what was pleaded in the Complaint. Plaintiff Shelby now attests that the values represented by Defendant Greenberg are significantly higher than initially pleaded in the Complaint and that his former counsel made errors in drafting those paragraphs of the Complaint. That matter is addressed below in Section II, B.

[4]This value representation reflects what was pleaded in the Complaint. Plaintiff Shelby now attests that the values represented by Defendant Greenberg are significantly higher than initially pleaded in the Complaint and that his former counsel made errors in drafting those paragraphs of the Complaint. That matter is addressed below in Section II, B.

Herzog Jewelers ("Herzog"), described the bracelet, and requested that an appraisal be mailed to Shelby. *Id.* ¶ 42. Herzog did not actually examine the bracelet while preparing the appraisal. *Id.* ¶ 43. Shelby received the appraisal from Herzog, which confirmed Greenberg's representation that the diamonds were each one-half carat. *Id.* ¶ 44.

On June 27, 2006, Shelby took the bracelet to Herzog for another appraisal because he did not believe that Herzog had actually examined the bracelet. *Id.* ¶ 50. Herzog's second appraisal of the bracelet also stated that the diamonds were each one-half carat. *Id.* ¶¶ 50, 51; Ex. C., ECF No. 2-3. In November 2007, Shelby took the bracelet to a jewelry show to inquire about the price of having a similar bracelet made. *Id.* ¶ 53. The jeweler estimated that the bracelet might be worth less than Shelby thought. *Id.* As a result, on January 14, 2008, Shelby went to the Diamond Cellar to obtain an independent appraisal. *Id.* ¶ 54, 55; Ex. D, ECF No. 2-4. The Diamond Cellar appraised each stone in the bracelet as weighing .39 carats. *Id.* Five days later, Shelby took the bracelet to Main Jewelers for another appraisal, which indicated that each stone weighed .325 carats. *Id.* ¶ 56, 57; Ex. E, ECF No. 2-5.

After learning of Shelby's discovery that the bracelet was worth less than originally appraised, the Furmans took the earrings and ring to the Diamond Cellar for an independent appraisal. *Id.* ¶¶ 58, 59. The Diamond Cellar indicated that the earrings totaled 6.3 carats in weight and were worth $32,535. *Id.* ¶ 59, 60; Ex. F, ECF No. 2-6. Further, the Diamond Cellar's appraisal indicated that the ring's center stone weighed 2.7 carats and was worth $37,325. *Id.* ¶ 61, 62; Ex. G, ECF No. 2-7. This litigation ensued.

Plaintiffs filed their Complaint, ECF No. 2, on August 15, 2008, alleging three counts of fraudulent misrepresentation. They seek damages for the difference in value between what they were promised and what they received, and for the appreciation of what they were promised and the actual appreciation. Plaintiffs also seek damages for bad faith and punitive damages.

Specifically, Count I alleges Greenberg, acting as an agent for Codiam, represented the earrings to be worth $70,000,[5] knew or should have known the earrings were not worth $70,000, made this representation to induce the purchase of the earrings, and his representation that the earrings were worth $70,000 was material to the decision to purchase the earrings and the Furmans justifiably relied on the representation that the earrings were worth $70,000. *Id.* ¶¶ 63–71.

Count II alleges Greenberg, acting as an agent for Cora, represented the ring to be worth $45,000,[6] knew or should have known the ring was not worth $45,000, made this representation to induce the purchase of the ring, and his representation that the ring was worth $45,000 was material to the decision to purchase the ring and the Furmans justifiably relied on the representation that the ring was worth $45,000. *Id.* ¶¶ 72–80.

Count III alleges Greenberg, acting as an agent for E. Schreiber, represented the

---

[5]This value representation reflects what was pleaded in the Complaint. Plaintiff Shelby now attests that the values represented by Defendant Greenberg are significantly higher than initially pleaded in the Complaint and that his former counsel made errors in drafting those paragraphs of the Complaint. That matter is addressed below in Section II, B.

[6]This value representation reflects what was pleaded in the Complaint. Plaintiff Shelby now attests that the values represented by Defendant Greenberg are significantly higher than initially pleaded in the Complaint and that his former counsel made errors in drafting those paragraphs of the Complaint. That matter is addressed below in Section II, B.

stones in the bracelet each to be of one-half carat weight, knew or should have known the stones in the bracelet each were not of one-half carat weight, made this representation to induce the purchase of the bracelet, and his representation that the stones in the bracelet were each of one-half carat weight was material to the decision to purchase the bracelet and the Furmans justifiably relied on the representation that the stones in the bracelet were each of one-half carat weight. *Id.* ¶¶ 72–80.

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635 (6th Cir. 2010). The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metro. Gov't of Nashville Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves,*

530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Thus, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

In response to a motion for summary judgment, an adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must respond in a way that "set[s] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *Id.*; *see also Celotex Corp.*, 477 U.S. at 324.

### A. Weight of the diamonds

The parties filed a Joint Report from a third-party appraiser and stipulated to the weight of the diamonds in the various pieces of jewelry. Joint Report, ECF No. 63. Defendants assert that the weights in the appraisal by the independent appraiser are equivalent or nearly equivalent to the weights represented by Defendant Greenberg during the transactions and as alleged in the Complaint. Defs.' Mot. Summ. J. 1–5, ECF No. 68. In Plaintiffs' response, they do not oppose Defendants' statement, nor do they argue that any factual dispute remains as to the weights of the diamonds or Defendant Greenberg's representations about the weights. Pls.' Resp. Opp'n., ECF

No. 80. Therefore, the Court finds that Plaintiffs have abandoned their position that Defendant Greenberg fraudulently misrepresented the weights of the diamonds in the subject jewelry. Instead, Plaintiffs now point exclusively to the "value" or "worth" of the jewelry as the facts still in dispute in this case as support for denying Defendants summary judgment. *Id.* at 3. That argument is discussed below in Section III.B.

Accordingly, the Court finds that the weights in the appraisal determined by the independent appraiser are equivalent or nearly equivalent to the weights represented by Defendant Greenberg during the transactions alleged in the Complaint.

**B. Value of the jewelry**

The alleged values of the three pieces of jewelry as represented by Defendant Greenberg were stated in the Complaint as described above in Section I. However, Plaintiffs, in their response in opposition to summary judgment, now attach an affidavit of Plaintiff Shelby stating that the alleged values as represented by Defendant Greenberg that were stated in the Complaint were not correct. Shelby Aff., ECF No. 80-1. Plaintiffs aver that the value allegations in the Complaint were "actually errors made by Plaintiffs' former counsel when drafting the Complaint." Pls.' Resp. Opp'n 2, ECF No. 80. Remarkably, these same "errors" reiterating the value allegations were made in subsequent motions filed by Plaintiffs and Plaintiffs' former counsel. *See, e.g.*, Resp. Opp'n Defs.' Mot. Dismiss 2, ECF No. 18. Also, at no time in this protracted litigation have Plaintiffs sought leave to amend the Complaint. Plaintiff Shelby, however, now attests at this late stage in the litigation that the values represented by Defendant Greenberg are significantly higher than initially pleaded in the Complaint and that his former counsel made errors in drafting those paragraphs of the Complaint.

Shelby Aff. ¶¶ 4–10, ECF No. 80-1. Plaintiff Shelby's affidavit says Defendant Greenberg represented the earrings to be worth $170,000.00, represented the ring to be worth $100,000.00, and represented the bracelet to be worth $180,000 at the time of the purchase, *id.*, not $70,000, $45,000, and $58,000, respectively, as Plaintiffs originally pleaded.

While the Court is skeptical of Plaintiff Shelby's new allegations regarding Defendant Greenberg's value representations, it matters not, as the Court will view the evidence in the light most favorable to the non-movant. *Henderson*, 469 F.3d at 487. In doing so, however, Plaintiffs' new allegations present the Court the opportunity to reconsider its original Opinion and Order in this case regarding the statute of limitations. Op. and Order, ECF No. 26

The statute of limitations defense was previously raised by Defendants in motions to dismiss when Defendants argued Plaintiffs' claims were time barred under Ohio's four-year statute of limitations for fraud actions. *See, generally,* Ohio Rev. Code § 2305.09 (an action for fraud shall be brought within four years after the cause thereof accrued or the fraud is discovered). In their response to the motions to dismiss, Plaintiffs took the position that they did not "discover" the fraud until November 2007 when Shelby took the bracelet to a jewelry show and learned that it was worth less than originally appraised, thereby putting him on notice that the ring and earrings might also be worth less than represented. Thus, according to Plaintiffs, the statute of limitations was tolled until their "discovery" of the misrepresentations upon their receipt of the 2007 reappraisals which appraised the jewelry at a value lower than what was represented by Defendant Greenberg.

In its Opinion and Order regarding the statute of limitations, this Court found that under the facts and tolling theory alleged in the Complaint, the issue of when Plaintiffs "discovered" the fraud was not properly resolved on a motion to dismiss. Op. and Order, ECF No. 26. The Court was required to accept as true the well-pleaded facts set forth in the Complaint, and found the Complaint alleged sufficient facts to suggest that the "discovery rule" would serve to toll the running of the four year statute of limitations. However, upon consideration of Plaintiff Shelby's affidavit, the Court concludes that Plaintiffs' claims for fraud are untimely and are therefore time-barred.

A fraud claim is subject to a four-year statute of limitations. Ohio Rev. Code § 2305.09 (C). Under the discovery rule, however, "a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant. In essence, the running of the limitations period is delayed until triggered by a 'cognizable event' that alerts the plaintiff that he or she was injured by the defendant." *Collins v. Sotka*, 81 Ohio St. 3d 506, 507–08 (1998) (internal citations omitted); *see also Local 219 Plumbing and Pipefitting Indus. Pension Fund v. Buck Consultants*, No. 08-3100, 2009 WL 396168, at * 3 (6th Cir. 2009). "Information sufficient to alert a reasonable person to the possibility of wrongdoing triggers a party's duty to inquire into the matter with due diligence." *Au Rustproofing v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985). "Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false sense of security to toll the statute." *Id.* "It is unnecessary for a plaintiff to be aware of the full extent of damages before there is a cognizable event." *Rosendale v. Ohio Dep't of Transp.*, No. 08AP-378, 2008 WL

4368580, at *2 (Ohio Ct. App. Sept. 25, 2008).

In the case at bar, the undisputed facts demonstrate that Plaintiffs had sufficient information to be aware of the alleged fraud at the time of purchase of each piece of jewelry. Shelby attests that the at the time of purchase in December 1998, the earrings were alleged to be worth $170,000.00. Yet in the December 21, 1998 appraisal Plaintiffs received by mail, Compl. ¶ 22, ECF No. 2, the earrings were appraised by Codiam to have a "current replacement value" of only $70,000. *Id.*, ECF No. 2-1. Shelby attests that the at the time of purchase in February 2001, the ring was alleged to be worth $100,000.00. Yet in the February 7, 2001 appraisal Plaintiffs received by mail, *id.* ¶ 33, ECF No. 2, the ring was appraised by Cora to have the "total retail value" of $45,000. ECF No. 2-2. Shelby attests that at the time of purchase in March 2004, the bracelet was alleged to be worth $180,000. Yet in the March 2004 appraisal Plaintiffs received by mail, *Id.* ¶¶ 38–45, ECF No. 2, the bracelet was appraised to be worth $58,000.[7] Shelby also signed his name to a memorandum valuing the bracelet at $30,000. Thus, Plaintiffs would have been put on notice of Defendant Greenberg's alleged misrepresentations the moment they received each Defendant's appraisal of a significantly lesser value. Those facts "would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." *Cundall v. U.S. Bank*, 122

---

[7]The Court notes that Defendants also oppose Shelby's affidavit on the ground that Shelby is not an expert, and thus cannot attest to the actual value of the diamond jewelry. Defendants point out both that Shelby previously stated that he is "not knowledgeable about diamond jewelry . . .", and that Shelby has not presented any qualifications suggesting he has specialized knowledge regarding the value of diamond jewelry.

Shelby, however, can properly attest to what value representations were made to him by Defendant Greenberg. Those value representations combined with the concurrent appraisals put Shelby on notice as to the alleged fraud. Thus, his proclamations regarding the actual value of the diamond jewelry, whether proper or not, is of no consequence because of the finding on the statute of limitations.

Ohio St. 3d 188, 194 (2009) (additional citations omitted).

There is no question of fact for a jury to entertain, nor need a jury entertain the question of when a "reasonable person" would have discovered the fraud, because Plaintiffs' own attestations and exhibits point out the glaring inconsistencies between the appraisals and Defendant Greenberg's representations and establish the jewelry was of a significantly lesser value than represented. See, e.g., Dancar Properties, Ltd. v. O'Leary-Kientz, Inc., No. C-030936, 2004 WL 2974067, at *2–*3 (Ohio App. 1 Dist. Dec. 23, 2004) (affirming grant of summary judgment to the defendants, finding that four-year limitations period on insureds' claim of negligent misrepresentation against flood insurer and its agent ran from time that insureds obtained a quote for flood insurance on property that was approximately 20 times the cost of agent's quote and insureds made no effort to investigate the reason for the disparity). The information Plaintiffs needed to discover fraud was available to them upon receipt of the appraisals valuing the jewelry at an amount significantly less than Defendant Greenberg represented they were worth. Plaintiffs offer no new theory as to why the statute of limitations should be tolled under a discovery theory, such as by offering evidence as to what peculiar circumstances would have made Defendants offer such incredible deals on each piece of jewelry.

Accordingly, in applying the four-year statute of limitations to the date when Plaintiffs would have been on notice of the fraud—the date they received the appraisals valuing the jewelry significantly less than Defendant Greenberg's representations— each claim is time barred. The Complaint in this case was filed August 15, 2008. The earrings' appraisal was dated December 21, 1998 and was mailed to Plaintiffs, Compl.

¶ 22, ECF No. 2; thus the claim would be time barred as of sometime in late December 2002. As to the ring, its appraisal was dated February 7, 2001 and was mailed to Plaintiffs, *id.* ¶ 33; thus the claim would be time barred as of sometime in February 2005. Finally, the bracelet's appraisal was in March 2004 and was also mailed to Plaintiffs, *id.* ¶¶ 38–45; thus the claim would be time barred as of sometime in March 2008. All claims had expired by the time Plaintiffs' filed their Complaint. Thus, Plaintiffs' own disclosures and the evidence taken in the light most favorable to Plaintiffs demonstrates that no genuine issue of material fact exists as to Plaintiffs' discovery of the alleged fraudulent misrepresentations. The undisputed facts lead unerringly to the conclusion that no reasonable jury could find that any legitimate basis exists for tolling the statute of limitations due to a lack of discovery of the alleged misrepresentations. Therefore the Court **GRANTS** Defendants' motion for summary judgment on all of Plaintiffs' claims.

### III. COUNTERCLAIMS

Defendants only cursorily tack on the end of their summary judgment motion the argument that, in addition to judgment on Plaintiffs' claims, Defendants should also be granted judgment on the counterclaims. Defendants do not properly support such request for summary judgment with any law, argument, or evidentiary support. Without more, the Court finds it would be improper at this time to grant judgment on the counterclaims for breach of contract, unjust enrichment, and fraud in the inducement. Therefore the Court **DENIES** Defendants' motion for summary judgment on the counterclaims.

## IV. MOTIONS TO SHOW CAUSE

Defendant Greenberg files a motion to show cause requesting the Court issue a show cause order why this case should not be dismissed for failure to prosecute after Plaintiffs failed to tender a settlement demand pursuant to this Court's Order. Order, ECF No. 60. Defendant Codiam also filed a motion for a show cause order on the same grounds requesting that the Court exercise its discretion to dismiss Plaintiffs' case and order attorneys' fees for their time spent drafting the show cause motion. ECF No. 67. Plaintiffs aver that due to a disagreement with their formal counsel, they were unable to tender a settlement demand to Defendants and that they should not be sanctioned for their change in counsel. Pls.' Resp. Opp'n Defs.' Mot. Sanctions, ECF Nos. 73, 79.

Given that Plaintiffs changed counsel on the eve of the deadline to tender a settlement demand, Plaintiffs' failure to timely tender such settlement demand was not unreasonable. Soon after Plaintiffs secured new counsel, a settlement demand was tendered forthwith. Dismissing the case, as requested by Defendants, on that ground is not warranted. Additionally, the Court declines to exercise its discretion to award attorneys fees in connection with Defendant Codiam's filing of its motion to show cause. Accordingly, Defendant Greenberg and Codiams's motions for a show cause order are **DENIED**. ECF Nos. 64, 67.

## V. SANCTIONS

In Defendants' Motion for Summary Judgment and for Sanctions, ECF No. 68, Defendants claim that, pursuant to Federal Rule of Civil Procedure 11 and Ohio Revised Code § 2323.51, Plaintiffs should be sanctioned because their claims are

meritless and their conduct during the litigation has been dilatory. Specifically, Defendants state Plaintiffs unnecessarily caused them to incur significant litigation costs through their dilatory response to discovery requests and efforts in weighing the diamonds. *Id.*

Under Rule 11, a pleading presented to a court carries an implied certification that, *inter alia*, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3). Rule 11 contains a "safe harbor" provision whereby the motion for sanctions must be served on the opposing party at least 21 days before being filed with the court. *See* Fed. R. Civ. P. 11(c)(2). This gives the opposing party the opportunity to remedy the alleged violation prior to facing the possibility of sanctions. Additionally, the rule provides that requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion. See Fed. R. Civ. P. 11(c)(2) (stating that motions for sanctions brought under Rule 11 "*must be made separately from any other motion* and must describe the specific conduct that allegedly violates Rule 11(b)" ) (emphasis added).

Therefore, the Court declines to consider Defendants' motion for sanctions, as it is embedded in their motion for summary judgment in clear violation of the text of Rule 11(c)(2). Defs.' Mot. Summ. J. 11–14.

Defendants' motions for the imposition of sanctions are **DENIED**.

## VI. CONCLUSION

For the aformentioned reasons, Defendants' Motion for Summary Judgment and

for Sanctions is **GRANTED IN PART** and **DENIED IN PART**. ECF No. 68. The Motions for Order to Show Cause and Sanctions are **DENIED**. ECF Nos. 64, 67. The Court dismisses Plaintiffs' claims **WITH PREJUDICE**.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**